## A95A2532. GEORGE v. THE STATE.
(469 SE2d 360)

SMITH, Judge.

Roy Lee George was convicted of involuntary manslaughter and aggravated child molestation. His motion for new trial was denied, and he appeals. George raises the general grounds that the verdict was contrary to the law and evidence and strongly against the weight of evidence. He *argues*, however, only regarding the aggravated child molestation conviction, making no specific argument regarding the involuntary manslaughter conviction.

1. Viewed to support the verdict, the evidence showed that on the night of July 17, 1994, Shataria Middleton, a 16-month-old baby, was being cared for by her grandmother, Carol Middleton, in Middleton's home in Lumber City, Georgia. Shataria and her mother, Cellie Middleton, lived with Carol Middleton. Shataria fell asleep in Carol Middleton's lap around 12:00 midnight, and Middleton laid her in the baby bed in the room usually shared by Shataria and Cellie. Middleton testified that before falling asleep, Shataria was both healthy and active and was not ill or hurt. George and two of his friends also were in the Middleton home on that night and into the early hours of the next day. George slept in the bedroom in which Shataria slept, while his friends slept in another room. Carol Middleton slept in a separate bedroom.

Around 2:15 a.m., Officer William Thompson of the Lumber City

Police Department responded to a call regarding the Middleton residence. Upon arriving, he found Shataria lying in the bed "very cold and not responding to anything, not breathing." She showed no signs of life. He unsuccessfully attempted to revive her through CPR. The emergency medical technicians who were summoned were likewise unsuccessful in their attempts to revive her through administration of infant CPR.

An associate state medical examiner, Dr. Mark Koponen, conducted an autopsy on the body, finding several injuries, including several head, neck, and facial bruises and cuts. He described two of the injuries as having been caused "at or about the time of death." Dr. Koponen found a large amount of blood in the abdominal cavity caused by "two very large lacerations" of the liver and opined that the liver was lacerated due to a blunt force trauma. He stated the child had received a blow to her abdomen such that her liver was compressed between the front and back of her rib cage and was split. He estimated she would have died within 15 to 30 minutes after receiving the blow.

Dr. Koponen also discovered two broken ribs and blood in the tissues around the pancreas. These injuries too were caused by a blunt force. He testified that infant CPR, if properly performed, would not have caused such injuries. No evidence was presented at trial that CPR was improperly performed. In fact, although Dr. Koponen admitted that a rib could be broken, he stated that such an injury did not occur as a result of CPR "in this particular case." When asked his opinion of the cause of death, he stated that Shataria had no other injuries or natural diseases "that would have caused or contributed to the death except for these blunt force injuries of the chest and abdomen which lacerated [her] liver causing massive internal hemorrhage." He testified that Shataria would have died within 15 to 30 minutes after receiving the blow. Further, no evidence shows that anyone other than George had any reason to enter or did enter the bedroom with Shataria and George between the time her grandmother placed her in her bed until Shataria was found limp.

Following the autopsy, George was questioned by an agent with the Georgia Bureau of Investigation, Wesley Holbrook. Holbrook prepared a statement based on the information given to him by George. Holbrook testified he read the statement aloud to George, gave it to George, and assumed he read it. He also testified that George signed the statement and initialed each page. The statement recited in relevant part that George awoke from sleeping in Shataria's room to find the baby in need of being changed. He changed her diaper, threw it out the back door, and reentered the bedroom. He stated that upon his return, the baby was hollering and he "popped her twice." After going back to sleep, he was awakened by the baby making noise "like

she was trying to catch her wind back." Carol Middleton was then summoned. Middleton testified she found the child was not breathing and had a wet diaper. George's statement further recited that "this whole thing was an accident." We find these facts sufficient to enable a rational trier of fact to find George guilty of the crime of involuntary manslaughter beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Regarding the aggravated child molestation charge, the medical examiner also described two different types of injuries to Shataria's vaginal area: (1) two lacerations to her external genitalia; and (2) an area of hemorrhage at the entrance to the vaginal cavity and down the length of the vagina. He testified that the internal hemorrhage on the vagina was "fairly intense" and was caused by a blunt force type of trauma. Although he estimated that one of the external lacerations could have occurred just before death or up to 18 to 24 hours prior to death and the other laceration was even older, we nevertheless find sufficient evidence to enable a rational trier of fact to find George guilty of the crime charged under *Jackson v. Virginia*, supra. As noted above, evidence was presented that the child appeared healthy and well when her grandmother put her to bed, that George changed her diaper, and most importantly, that George was the only person in the room with her from the time she was put to bed until she was discovered cold, limp, and unconscious. Although the medical examiner was not specifically asked *when* the vaginal hemorrhage occurred, from the evidence that was adduced at trial, including the evidence regarding the internal wound's intensity, a rational jury could have found beyond a reasonable doubt that the injury occurred *after* the time she appeared to be healthy and well, when only George was in the room with her. There was sufficient circumstantial evidence on which to convict George of the crime charged.

2. George's contention that venue was not proved by the State was not raised below. We will not consider matters raised for the first time on appeal. See *Ricks v. State*, 217 Ga. App. 666, 668 (2) (458 SE2d 862) (1995).

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 16, 1996.

*Straughan & Straughan, William T. Straughan*, for appellant.
*Timothy G. Vaughn, District Attorney, H. Frederick Mullis, Jr., Assistant District Attorney*, for appellee.